IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ÅKERS NATIONAL ROLL COMPANY,              )
                                           )
            Plaintiff,                     )
                                           )
     v.                                    )    2:10cv1079
                                           )    **Electronic Filing**
UNITED STEEL, PAPER AND FORESTRY,          )
RUBBER, MANUFACTURING, ENERGY,             )
ALLIED INDUSTRIAL AND SERVICE              )
WORKERS INTERNATIONAL UNION and            )
its LOCAL UNION 1138-4 OFFICE AND          )
TECHNICAL,                                 )
                                           )
            Defendant.                     )

### MEMORANDUM OPINION

March 13, 2012

**I.    INTRODUCTION**

Plaintiff, Akers National Roll Company ("Akers" or "Plaintiff"), filed a Complaint to vacate an award entered in a labor arbitration with Defendants, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("USP&F"), and its Local Union 1138-4 Office and Technical (the "Local") (collectively the "Union" or "Defendants"). The parties have filed cross-motions for summary judgment, and the matter is now before the Court.

**II.   STATEMENT OF THE CASE**

The Union and the Local are labor organizations representing certain Akers employees as defined by Sections 2(5), 502(1) and 502(3) of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 141 *et seq.* Plaintiff's Concise Statement of Material Fact ("Plaintiff's CSMF") ¶ 2. Akers manufactures advanced metal technology rolls for hot and cold strip mills and operates a manufacturing plant in Avonmore, Pennsylvania (the "Plant"). Plaintiff's CSMF ¶ 5. The Union is the exclusive bargaining representative for the clerical and technical employees

at the Plant, and the Local represents these employees for certain purposes. Plaintiff's CSMF ¶ 6. Akers and the Union are parties to a collective bargaining agreement (the "CBA"), effective from September 1, 2008, to February 29, 2012. Plaintiff's CSMF ¶ 7; Defendants' Concise Statement of Material Fact ("Defendants' CSMF") ¶ 1.

Nelson Lubik ("Lubik"), a maintenance clerk at the Plant and an employee as defined under the CBA, filed three grievances against Akers dated February 17, 2009, March 2, 2009, and March 10, 2009. Plaintiff's CSMF ¶¶ 8 & 9. In each of the grievances, Lubik alleged that Akers violated the CBA when he was directed not to work weekend shifts during the same time that employees of the maintenance department were scheduled to work. Plaintiff's CSMF ¶ 9. Lubik contended that Akers was liable for the overtime pay he would have been paid under the CBA had he been scheduled to work. Plaintiff's CSMF ¶ 10.

The CBA includes a procedure for the "efficient processing and settlement of grievances." Defendants' CSMF ¶ 2. If the parties are unable to resolve the dispute, the CBA allows for the grievance to be taken to arbitration. *Id.* Akers denied the grievances contending that it had the right under the CBA to schedule its workforce. Plaintiff's CSMF ¶ 11. On June 17, 2010, an arbitration hearing was held before Arbitrator Richard D. Sambuco (the "Arbitrator"). Plaintiff's CSMF ¶ 17; Defendants' CSMF ¶¶ 2 & 3. At the arbitration, Akers and the Union stipulated that all three grievances presented the same issue. Plaintiff's CSMF ¶ 17.

It was the Union's position that because Lubik was always asked to work on weekend shifts when the maintenance personnel were scheduled to work, whether or not his name was listed on the schedule, Akers established a past practice that obligated Akers to allow Lubik the option to work on any weekend that maintenance personnel were scheduled to work. In addition to its argument that the CBA vested it with the exclusive right and discretion to schedule its

2

employees working hours, Akers also argued that a "zipper clause" in the CBA prohibited the establishment of any past practice.

The Arbitrator determined that issue[1] was:

> Did the parties to the [CBA] . . . establish, by their actions in the year 2008, an unwritten past practice and did [Akers] violate this past practice? If the answer is yeas, what is the remedy.

Plaintiff's App. Ex. D p. 21. The Arbitrator issued an Award on July 17, 2010, which sustained the grievances and found that Akers violated the CBA when it directed Lubik not to work weekend shifts during times when the maintenance department was scheduled to work. Plaintiff's CSMF ¶ 18. Specifically, the Arbitrator concluded that:

> . . . the parties were involved (for the twelve months of 2008) in an unwritten practice of allowing the Maintenance Clerk (Nelson Lubik) to work, even though he was not scheduled, along with Maintenance personnel (full or partial crews) on weekend overtime throughout the entire year of 2008.

Plaintiff's App. Ex. D p. 34. The Arbitrator further found that the "consistency of practice" did not extend to 2009 or the first half of 2010. Defendants' CSMF ¶ 20; Plaintiff's App. Ex. D p. 40. Akers was ordered to pay Lubik $5,477.08, "plus any remaining unknown profit sharing for the second quarter of 2010" for violating past practice. Defendants' CSMF ¶ 21.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine

---

[1] The Union contends that the parties "presented" this issue to the Arbitrator, but this Court can find no evidence of such contention. The Court can find no indication that the Arbitrator ever requested that the parties, either orally or in writing, submit or stipulate to the issue to be resolved. The issue, therefore, was determined by the Arbitrator without input from, or stipulation by, the parties.

3

and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

These rules apply with equal force to cross-motions for summary judgment. *See Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008). When confronted with cross-motions for summary judgment, as in this case, the Court considers each motion separately. *See*

*Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co.*, 10 F.3d 144, 150 (3d Cir. 1993) (noting that concessions made for purposes of one party's summary judgment motion do not carry over into the court's separate consideration of opposing party's motion).

IV. **DISCUSSION**

A district court has very limited authority to vacate an arbitration award. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (holding that "judicial review of a labor-arbitration pursuant to [a collective bargaining] agreement is very limited."); s*ee also Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003) (stating that a district court may vacate an arbitration award "only under exceedingly narrow circumstances"). A collective bargaining agreement represents a contractual accord reached between an employer and its employees. If such a contract includes an arbitration clause, it is assumed that the parties bargained for a grievance resolution procedure in which an arbitrator would interpret the agreement. *Brentwood Med. Assocs. v. UMW*, 396 F.3d 237, 240 (3d Cir. 2005).

An arbitration award, therefore, must be enforced as long as the arbitrator arguably construed or applied the contract, and even if the arbitrator has committed a serious error. *United Trans. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995). It is not the district court's role to correct legal or factual errors made by an arbitrator. *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d at 240; *see also Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 279 (3d Cir. 2004). Therefore, an arbitration award cannot be overturned "even if the court finds the basis for it to be ambiguous or disagrees with its conclusions under the law." *Citgo Asphalt Refining Co. v. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union Local No. 2-991*, 385 F.3d 809, 816 (3d Cir.2004).

An arbitration award based on construction of a CBA cannot be vacated if the award

5

"draws its essence" from the CBA. *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987); *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d at 240. An arbitration award "draws its essence" from a CBA if the arbitrator's interpretation "can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." *Brentwood Med. Assocs.*, 396 F.3d at 241 (quoting *United Trans. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d at 379-380). Arbitration awards are clothed with "a strong presumption of correctness that . . . may be vacated if the arbitrator demonstrates manifest disregard for the CBA," established when the award is "totally unsupported by principles of contract construction." *Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d at 280 (*quoting Exxon Shipping Co. v. Exxon Seamen's Union*, 993 F.2d 357, 360 (3d Cir. 1993)).

Here, Akers contends that the Award should be vacated because: (1) the Award fails to draw its essence from the CBA; and (2) the Award directly contradicts the CBA, and therefore, the Arbitrator exceeded his authority and jurisdiction by impermissibly modifying the CBA.

Akers argues that the Award does not draw its essence from the CBA because it ignores Akers' right to schedule its workforce. Section 3 of the CBA specifically states:

> [Akers] retains the exclusive rights to manage the business and plant and to direct the working forces. . . . The rights to manage the business and plant and to direct the working force includes the right to hire, suspend or discharge for proper cause, or transfer, and the right to relieve employees from duty because of lack of work or for other legitimate reasons.

CBA, Plaintiff's App. Ex. C, Section 3(1) & (2). Section 9 of the CBA directs that the "normal workweek" is forty (40) hours scheduled successively Monday through Friday, and the normal work day is eight (8) hours. CBA, Plaintiff's App. Ex. C, Section 9(A)(1) &(2).

The Supreme Court has made clear that the "arbitrator may not ignore the plain language of the contract." *United Paperworkers Int'l Union, AFL-CIO v. Misco*, 484 U.S. 29, 38 (1987).

The arbitrator's award "must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." *Id.* In finding for the Union, the Arbitrator did not discuss Akers exclusive right to schedule its employees under Section 3[2] of the CBA, but instead relied upon Akers alleged violation of "past practice." Moreover, neither the Union nor the Arbitrator discussed the standards for introducing extrinsic evidence to interpret the written contract. The Court of Appeals for the Third Circuit has made it clear that extrinsic evidence of "past practice" could be admitted, if at all, only to resolve an ambiguity in the CBA. In *U.A.W. Local 1697 v. Skinner Engine Company*, 188 F.3d 130 (3rd Cir. 1999), the court stated:

> Although extrinsic evidence is admissible to show that a written contract which looks clear is actually ambiguous, perhaps because the parties were using words in a special sense, . . . there must be either contractual language on which to hang the label of ambiguous or some yawning void . . . that cries out for an implied term. Extrinsic evidence should not be used to add terms to a contract that is plausibly complete without them.

*Id.* at 146 (internal quotation and citations omitted).

Ignoring Akers' reliance on the plain language of Section 3 of the CBA, the Arbitrator formulated the issue in terms of "past practice," and began his analysis with the industry definition of "past practice." Based on industry usage, the Arbitrator defined "past practice" as:

> A claim used by unions in support of arguments against the unilateral abandonment by management of an existing wage, benefit or working condition **not specifically covered by the labor agreement**.

Plaintiff's App. Ex. D p. 26 (citing ROBERT'S DICTIONARY OF INDUSTRIAL RELATIONS, 573 (BNA Inc., 4th ed.))(emphasis added). The Arbitrator further explained:

> The past practice issue is . . . "one of the most significant factors

---

[2] Though the Arbitrator included the full text of Section 3 in the "Contract Language" section of his Decision, he makes no mention of Akers' rights thereunder in the "Discussion on the Merits." Moreover, the Union fails to address Akers' right to manage and direct its workforce in either its brief in opposition to Akers' Motion for Summary Judgment or in its brief in support of the Union's Motion for Summary Judgment.

7

> in labor-management arbitration," the major purposes of which are "(1) to provide the basis of rules governing matters **not included in the written contract**; (2) to indicate the proper interpretation of **ambiguous contract language**; or (3) to support allegation that clear language of the written contract has been amended by mutual action or agreement."

*Id.* (citing, *inter alia*, Frank Elkouri and Edna Asper Elkouri, HOW ARBITRATION WORKS, (BNA Inc., 4th ed., 1985))(emphasis added).

By its industry definition and listed purposes, "past practice" is not applicable in this matter. At Section 3 of the CBA, the Union agreed that Akers has exclusive rights to manage the plant and direct its work force. Section 9 (B) directs Akers' scheduling of employees for work outside of the "normal workweek." Akers' decision whether or not to schedule Lubik to work any weekend that it scheduled a maintenance crew is a matter that is "covered by" and/or "included in" the CBA. The Arbitrator in this instance found nothing ambiguous about Sections 3 and 9 of the CBA, failed to indicate that such passages contained a "yawning void" requiring an implied term to determine their meaning, nor did he find that the plain language of the CBA had been amended by mutual action or agreement. *See Quik v. NLRB*, 245 F.3d 231, 247-248 (3d Cir. 2001).

The Arbitrator, instead, discussed in detail the evidence submitted indicating that Lubik worked certain weekends in 2008, 2009 and 2010 during times a maintenance crew was scheduled even though he was not formally scheduled to work. In addition, the Arbitrator dedicated a great deal of his analysis to whether the "zipper clause" set for under Section 2 of the CBA prevented his reliance on "past practice" to resolve the grievances, and whether the conduct at issue satisfied the elements of a "past practice."

A court may vacate an arbitration award that rests on consideration of "improper" extrinsic evidence when it can be readily determined that, in the face of the clear and unambiguous language of the CBA, the award was based on an arbitrator's sense of fairness or

non-binding past practices. See *Pa. Power Co. v. Local Union No. 272*, 276 F.3d 174, 181 (3d Cir. 2001)(holding that an arbitrator's award was improper "personal brand of justice" where the arbitrator overrode clear and specific terms of agreement by importing inapplicable anti-discrimination policy into employee benefit policy); *CITGO Asphalt Ref. Co. v. Paper, Allied-Industrial, Chem., & Energy Workers Int'l Union Local No. 2-991*, 385 F.3d 809, 817 (3d Cir. 2004) (holding that the arbitrator's opinion and award did not derive its essence from the CBA as it failed to give effect to the terms giving management discretion to enact a zero tolerance drug policy ); *see also CP Kelco US, Inc. v. Int'l Union of Operating Engineers*, 381 F. App'x 808, 814 (10th Cir. 2010) (holding that it was improper to consider past practices where the CBA was unambiguous).

The CBA provides Akers with the exclusive right to direct and schedule its workforce. The "zipper clause" is relevant only if the Arbitrator finds the language of the CBA ambiguous, and attempts to resolve the ambiguity by looking to "past practice." Having failed to find the language of the relevant CBA sections to be ambiguous, however, the alleged "past practice" of the parties is extrinsic evidence not admissible in these matters. Under the plain language of the agreement, Akers refusal to schedule Lusik for certain weekend overtime was simple not a violation of the CBA. Accordingly, although the role of this Court is narrow and deferential, this Arbitration Award does not "draw its essence" from the CBA and must be vacated.

Because the Arbitration Award does not "draw its essence" from the CBA, the Arbitrator exceeded his authority in relying on Akers' alleged "past practice" regarding the weekend overtime at issue. Lubik may have expected that such accommodation or practice would continue, but such expectation had no legal significance in light of Akers' right to schedule its workforce under the CBA. The arbitrator offers no precedent suggesting that Akers' discretionary approval of Lubik's overtime, in conjunction with maintenance, somehow became

mandatory under the law.  Nor did the Union direct this Court to authority for the proposition that by allowing Lubik to work such overtime, Akers somehow effected a non-written amendment to the very specific language of the CBA.  Therefore, as set forth above, the Arbitration Award must be vacated.

## V. CONCLUSION

Based on the foregoing, the Court finds that the Arbitration Award does not "draw its essence" from the CBA and must be vacated.  Therefore the Union's motion for summary judgment shall be denied, and Akers' motion for summary judgment shall be granted.  An appropriate order follows.

 s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:     John B. Bechtol, Esquire
        Kenneth S. Kornacki, Esquire
        Daniel M. Kovalik, Esquire
        Mariana L. Padias, Esquire

   (*Via CM/ECF Electronic Mail*)